NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| : | **Hon. Dennis M. Cavanaugh** |
| PETER HILBURN and FELICIA RYAN,  : | |
| : | # OPINION |
| Plaintiffs,  : | |
| : | Civil Action No. 07-CV-5211 |
| v.  : | |
| : | |
| BAYONNE PARKING AUTHORITY;  : | |
| JOSEPH DORIA, individually and in his  : | |
| official capacities; THE CITY OF  : | |
| BAYONNE, a Municipal Corporation;  : | |
| PETER CRESCI, individually and in his  : | |
| official capacities as Chairman of the  : | |
| Bayonne Parking Authority; MICHAEL  : | |
| PIERSON; KATHY LORE; and  : | |
| BAYONNE PARKING AUTHORITY  : | |
| (BPA) Commissioners 1-10, individually  : | |
| and in their official capacities,  : | |
| : | |
| Defendants.  : | |
| : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon a series of motions by Defendants seeking dismissal

and other relief, including: Michael Pierson's ("Pierson") motion to dismiss under Fed. R. Civ. P.

12(b)(6) and motion to strike under Fed. R. Civ. P. 12(f); Rocco Coviello's ("Coviello") motion to

dismiss under Fed. R. Civ. P. 12(c); Peter Cresci's ("Cresci") motion to dismiss under Fed. R. Civ.

P. 12(b)(6) and motion to impose sanctions under Fed. R. Civ. P. 11; Bayonne Parking Authority's

("BPA") motion to dismiss under Fed. R. Civ. P. 12(b)(6); and the City of Bayonne's ("City," and

collectively, "Defendants") motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Pursuant to Fed. R.

Civ. P. 78, no oral argument was heard.  After carefully considering the submissions of the parties,

and based upon the following, it is the finding of this Court that: Defendant Pierson's motion to

dismiss under Rule 12(b)(6) is **granted in part, denied in part**; Defendant Coviello's motion to

dismiss under Rule 12(c) is **granted in part, denied in part**; Defendant Cresci's motion to dismiss

under Rule 12(b)(6) is **granted in part, denied in part**; Defendant BPA's motion to dismiss under

Rule 12(b)(6) is **granted in part, denied in part**; Defendant City of Bayonne's motion to dismiss

under Rule 12(b)(6) is **granted in part, denied in part**; Defendant Pierson's motion to strike under

Rule 12(f) is **denied**; and Defendant Cresci's motion for sanctions under Rule 11 is **denied**.

I.    **BACKGROUND**[1]

    A.    Factual History

Plaintiff Felicia Ryan ("Ryan") was hired by the BPA as Executive Secretary in January

2001.  Plaintiff Peter Hilburn ("Hilburn," and collectively with Ryan, "Plaintiffs") was hired by

the BPA as Executive Director in September 2006.  Collectively, Plaintiffs and Defendant Kathy

Lore ("Lore") comprised the BPA Executive Department, each of whom were at-will employees

with no contractual right to employment.

Plaintiffs allege that between September 2006 and March 2007, members of the BPA and

City of Bayonne were engaging in criminal and suspicious activities.  Hilburn first became

suspicious when someone asked him to sign a check for a Christmas party without any

explanatory documentation.  Hilburn was also displeased because the BPA Commissioners took

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

2

trips and billed them to the BPA.  Hilburn thereafter instituted a policy forbidding such practices.
When Hilburn voiced his concerns to Mayor Joseph Doria ("Mayor Doria"), he claims Mayor
Doria told him to "let it be."

Ryan became concerned when she found an envelope with three parking tickets and a
"thank you" note from Pierson while retrieving payroll records from Lore's filing cabinet,
leading her to believe that Lore was illegally fixing tickets. Her concern grew upon finding un-
deposited cash in Lore's filing cabinet.  Hilburn allegedly witnessed Lore failing to report, record
or deposit cash from meter bags.  Hilburn also suspected that his signature was being forged by
someone at the BPA, possibly Lore.

Between March and May 2007, Hilburn voiced his concerns to several individuals,
including Mayor Doria, Cresci, Coviello, Bayonne Corporation Counsel and the Bayonne Court
Administrator.  Finding their response inadequate, Hilburn contacted the New Jersey Attorney
General ("Attorney General") and became an informant for the Attorney General's office.

In May 2007, the Attorney General served the BPA with the first of two subpoenas.
Plaintiffs allege that Coviello shredded the subpoenas due to concerns that news of the
subpoenas would be leaked.  Mayor Doria allegedly then told Hilburn that, "if you had anything
to do with this, you f***ed me and you f***ed yourself."

On July 16, 2007, the BPA terminated Plaintiffs and Lore.  Ryan was told that the BPA
was eliminating both her position and the BPA's executive branch and that she would not be
transferred to another department.  Cresci informed the media that the terminations were part of a
departmental reorganization to stimulate strategic improvements.  Plaintiffs dispute this

3

reasoning, however, and instead assert that their terminations were in retaliation for their whistle-blowing activities.

      B.    <u>Procedural History</u>

Plaintiffs filed a notice of tort claim pursuant to N.J.S.A. § 59.1-1 on August 2, 2007. The initial Complaint was filed on October 29, 2007. An Amended Complaint was filed on July 17, 2008, alleging nine separate causes of action, including: a civil action for deprivation of rights under 42 U.S.C. § 1983 (count 1); conspiracy to violate federal civil rights under 42 U.S.C. §§ 1983, 1985 and 1986 (count 2); intentional and/or negligent infliction of emotional distress (count three); negligent hiring / retention (count 4); *respondeat superior* (count 5); violation of the Conscientious Employee Protection Act ("CEPA") (count 6); interference with prospective economic advantage (count 7); violation of the New Jersey Civil Rights Statute (count 8); and wrongful termination (count 9). For each count, Plaintiffs seek an award of compensatory damages, punitive damages, reinstatement of employment and attorneys' fees.

Coviello is the only Defendant to have filed an answer. Defendants Pierson, Coviello, Cresci, BPA and the City of Bayonne have all moved for dismissal under either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c). Additionally, Pierson has filed a motion to strike under Fed. R. Civ. P. 12(f), and Coviello seeks sanctions under Fed. R. Civ. P. 11. Neither Mayor Doria nor Lore have filed a motion to dismiss.

## II.    <u>STANDARDS OF REVIEW</u>

    A.    <u>Fed. R. Civ. P. 12(b)(6)</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6) , all allegations in the

4

complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See

Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage

Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  If, after viewing the allegations in the complaint

in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted

"under any set of facts which could prove consistent with the allegations," a court shall dismiss a

complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In

Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Rule 12(b)(6) standard.  See 127 S.

Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson,

355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which

would entitle him to relief." Twombly, 127 S. Ct. at 1968 (citing Conley, 355 U.S. at 45–46).

Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right

to relief above the speculative level." Twombly, 127 S. Ct. at 1965.

    B.    Fed. R. Civ. P. 12(c)

    The standard applied to a Rule 12(c) motion for judgment on the pleadings is similar to

that applied to a Rule 12(b)(6) motion to dismiss.  Haynes v. Metropolitan Life Ins. Co., 94 Fed.

App'x 956, 958 (3d Cir. 2004).  Under Rule 12(b)(6), courts must accept as true all allegations in

the complaint, viewed in the light most favorable to the plaintiff.  See Gomez v. Toledo, 446

U.S. 635, 636 n.3 (1980); Robb v. Phila., 733 F.2d 274, 277 (3d Cir. 1984).  If no relief could be

granted under any set of facts that could prove consistent with the allegations in the complaint,

the court may dismiss the complaint for failure to state a claim. See Hishon, at 73; Bartholomew

v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

C.    Fed. R. Civ. P. 12(f)

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The court may do so on its own or "on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading."  Motions to strike are not favored, however, and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  5A Wright & Miller, Federal Practice and Procedure: Civil 2d §1382.

D.    Fed. R. Civ. P. 11

As provided by Rule 11, "[s]anctions may be imposed against an attorney or unrepresented party pursuant to Fed. R. Civ. P. 11(b)(2) for signing, filing, or later advocating a claim, defense, or other legal contention that is not warranted by existing law." 2 Moore's Federal Practice, § 11.11 [7] [a] (Matthew Bender 3d ed.).  Rule 11(c) requires notice and an opportunity to withdraw the offending document, by serving a motion for sanctions pursuant to Rule 11, but not filing it if the offending paper is withdrawn within twenty-one days of service.  See Fed. R. Civ. P. 11(c)(2).  Additionally, Rule 11(c) requires that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Id.  Furthermore, "[a] court considering the imposition of Rule 11 sanctions must bear in mind that such sanctions are to be imposed only in exceptional circumstances, 'where the claim or motion is patently unmeritorious or frivolous.'" Ritter v.

6

Clinton House Rest., 64 F. Supp. 2d 374, 396 (D. N.J. 1999) (quoting Dura Sys., Inc. v. Rothbury

Invs., Ltd., 886 F.2d 551, 556 (3d Cir. 1989)).  Rule 11 is "not intended to chill an attorney's

enthusiasm or creativity in pursuing factual or legal theories." Dura Sys., 886 F.2d at 556 (citing

Fed. R. Civ. P. 11 (advisory committee notes)). When issues are close, seeking Rule 11 sanctions

borders on an abuse of the system. See Gaiardo v. Ethyl Corp., 835 F.2d 479, 483–84 (3d Cir.

1987) (citations omitted).

## III.   DISCUSSION

Currently before the Court are a series of motions by Defendants Pierson, Coviello,

Cresci, BPA and the City of Bayonne requesting dismissal of the claims against them and other

relief.  For the reasons stated, the Court finds that: the Section 1983 claims alleging First

Amendment violations are dismissed as against Pierson and Coviello only; the Section 1985 and

1986 claims alleging conspiracy to violate First Amendment rights are dismissed as against all

Defendants; all federal claims alleging Fourteenth Amendment violations are dismissed; the

CEPA claims may proceed against all Defendants; and the remaining state law claims are

dismissed as against all Defendants filing a motion.  Furthermore, Pierson's motion for sanctions

is denied, and Cresci's motion to strike is denied.

### A.   Federal Claims

Plaintiffs assert federal claims against all Defendants for deprivation of constitutionally

protected rights under Section 1983 and for conspiracy to violate federal civil rights under

Sections 1983, 1985 and 1986.  Because Plaintiffs have alleged a proper First Amendment

retaliation claim under Section 1983 against City of Bayonne, BPA, and Cresci, those claims may

7

proceed.  Because Plaintiffs have failed to show that Coviello and Pierson acted outside the

scope of their "legitimate legislative activit[ies]," however, claims under Section 1983 against

them are dismissed.  All claims under Sections 1985(2) and 1986 are dismissed.  Additionally,

because Plaintiffs have failed to allege a property interest in their continued employment, all

claims based upon the Fourteenth Amendment are dismissed.

> i.      *First Amendment Claims under Section 1983*

In Counts 1 and 2, Plaintiffs assert First Amendment retaliation claims against all

Defendants under Section 1983.  While not a source of substantive rights, Section 1983 provides

a method for vindicating rights secured elsewhere in federal law.  Gonzaga Univ. v. Doe, 536

U.S. 273, 284–85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Plaintiffs

seeking damages thereunder must demonstrate that the defendant, acting under color of state law,

deprived him or her of a right secured by the Constitution or laws of the United States.   42

U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999).

Plaintiffs allege that they were deprived of their First Amendment rights when

Defendants retaliated against them for "blowing the whistle" on the corrupt activities allegedly

taking place at the BPA.  To prevail on a First Amendment retaliation claim, plaintiffs must show

that: (1) the conduct at issue was constitutionally protected; (2) the retaliatory action was

sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3)

a causal link between the constitutionally protected conduct and the retaliatory action.  Mitchell

v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Thomas v. Independence Twp., 463 F.3d 285, 296

(3d Cir. 2006).

Here, little doubt exists that Plaintiffs' speech was "protected conduct."  Public employees have a constitutional right to speak on matters of public concern without fear of retaliation.  See Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001).  Speech is said to involve a matter of public concern if it relates to "any matter of political, social, or other concern to the community."  Id. at 195.  In particular, speech bringing to light "actual or potential wrongdoing or breach of public trust on the part of government officials" has been identified as protected speech.  See id.; see also O'Donnell v. Yanchulis, 875 F.2d 1059, 1061 (3d Cir. 1989) ("Needless to say, allegations of corrupt practices by government officials are of the utmost public concern.").  In this case, Plaintiffs' "voicing their concerns and reporting behavior [by Defendants] that they believed to be criminal" is clearly protected conduct under the First Amendment.  Furthermore, Defendants' alleged retaliatory campaign of harassment and intimidation, including threats that Plaintiffs would "lose their jobs," is "sufficient to deter a person of ordinary firmness" from exercising those rights and satisfies the second prong.  See Thomas, 463 F.3d at 296.  Finally, due to the temporal proximity that exists between Plaintiffs' whistle-blowing activities, Defendants' alleged threats, and Plaintiffs' actual termination, the Court finds that Plaintiffs have sufficiently established a causal link between their constitutionally protected activity and the retaliatory action. Accordingly, construing the allegations in Plaintiffs' favor, the Court finds that Plaintiffs have adequately pled a deprivation of their First Amendment rights.

Thus, the only remaining question is whether each named Defendant acted to deprive Plaintiffs of their First Amendment rights "under the color of state law."  In support of their

claims, Plaintiffs make a series of allegations that, if true, may lead to a finding that Defendants deprived Plaintiffs of their First Amendment rights under the color of law, including: Defendants Doria, Cresci, Pierson, Coviello and the BPA commissioners are "policymakers" for the BPA; Mayor Doria "maintained control over the operations, business, policies and practices" of the BPA; Mayor Doria allegedly made adverse statements to Plaintiffs about getting along with the BPA commissioners and their job prospects; Cresci allegedly told Plaintiffs that they were "probably going to lose their jobs"; and Plaintiffs were eventually terminated by the BPA commissioners in retaliation for engaging in protected conduct.[2]

Because Mayor Doria is the City of Bayonne's "highest official," and because he is alleged to have threatened and then caused Plaintiffs' termination, the Court finds that, as alleged, the City of Bayonne may have had a "policy or custom" in effect that caused the constitutional violation, and thus that it may be sued directly under Section 1983.  See Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003) (finding that, even though municipalities may not be held vicariously liable under Section 1983, they may be held directly liable if "an unconstitutional policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business").  Similarly, because individual BPA commissioners are alleged to have threatened the Plaintiffs with termination in retaliation for Plaintiffs exercising their First Amendment rights, and because it is alleged that

---

[2]Plaintiffs also appear to base their federal claims on Defendants' alleged corrupt practices, including, *inter alia*, ticket fixing and submitting false expenses.  While those acts may have been improper, the Court will not consider them here because they do not have the effect of impinging on Plaintiffs' First or Fourteenth Amendment rights.

10

the BPA commissioners are in fact responsible for Plaintiffs' termination, the Court finds that the BPA may also have had in place a "custom or policy" that deprived Plaintiffs of their constitutional rights.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003) (the act of a governmental employee may be deemed a "custom or policy" where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"); see also Brennan, 350 F.3d at 428; Bowen v. Parking Auth. of Camden, 2003 WL 22145814, *32 (D.N.J. Sept. 18, 2003).  Accordingly, Plaintiffs' Section 1983 claims against the City of Bayonne and the BPA may proceed.

    With respect to the individual Defendants, the Court finds that the Section 1983 claims against Coviello and Pierson are dismissed for failure to state a claim, but that the claims against Cresci may proceed.  Federal common law provides public officials with immunity "for all actions taken in the sphere of legitimate legislative activity."  Baraka v. McGreevey, 481 F.3d 187, 195–96 (3d Cir. 2007); see also Bogan v. Scott-Harris, 523 U.S. 44, 54–55 (1998) (absolute legislative immunity for city council members who voted for ordinance eliminating government office of which plaintiff was sole employee).  In this case, Plaintiffs concede that Pierson, Cresci and Coviello are "policymakers" and "legislators entitled to immunity from civil liability for legislative activities."  Nonetheless, Plaintiffs contend that immunity should not attach to Coviello, Pierson and Cresci because they acted outside the scope of their employment by their "ticket fixing, misuse of funds, and engaging in illegal contracts along with their involvement in the conspiracy to terminate Plaintiffs' employment."  As the Court has already explained, however, the Defendants' alleged corrupt practices of ticket fixing, misusing funds and engaging

11

in illegal contracts have little relevance to Plaintiffs' First Amendment claims under Section 1983 because, while improper, they do not impact Plaintiffs' protected rights, and would not "deter a person of ordinary firmness from exercising his constitutional rights." See Mitchell, 318 F.3d at 530.  Rather, it appears that the only proper basis for Plaintiffs' Section 1983 claims are that Defendants engaged in a retaliatory campaign of threats and intimidation in an effort to prevent Plaintiffs from speaking about the alleged corruption.

Applied to Coviello, Pierson and Cresci, it appears that only two grounds exist upon which Plaintiffs may properly base their claims: (1) those actions taken by the individual Defendants in the course of their duties as BPA commissioners, including the decision to terminate Plaintiffs; and (2) Cresci's alleged threat that Plaintiffs were "probably going to lose their jobs."  With respect to the first basis, the Court has already explained that Coviello, Pierson and Cresci are immune from liability for "actions taken in the sphere of [their] legitimate legislative activity."  Thus, to the extent that Plaintiffs' claims are based upon actions taken within the "legislative" process, including the decision to terminate Plaintiffs, the individual Defendants are immune from suit.  To the extent that Plaintiffs' claims are based on non-legislative activities, however, including retaliatory threats and intimidation, their claims may proceed.  Accordingly, because it appears that the only valid Section 1983 allegations against Coviello and Pierson are based upon "actions taken in the sphere of legitimate legislative activity," they are immune from suit and their motions to dismiss are granted.  Because Cresci's alleged retaliatory threats take him outside the scope of his "legislative activities," however, he is not immune and his motion to dismiss is denied.

12

      ii.     *First Amendment Conspiracy Claims under Sections 1983, 1985 and 1986*

Plaintiffs also state claims under Sections 1983, 1985(2) and 1986 alleging that Defendants conspired to retaliate against them for exercising their First Amendment rights and to prevent Plaintiffs from speaking out about the alleged corruption.[3]  Plaintiffs asserting conspiracy claims under Section 1983 "must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law."  See Royster v. Beard, 2009 WL 146689, *3 (3d Cir. Jan. 22, 2009).  Similar to the findings above, the Court will allow the conspiracy claim under Section 1983 to proceed against Defendants City of Bayonne, the BPA and Cresci because it has been sufficiently alleged, at least at this stage, that they participated in a retaliatory campaign against Plaintiffs with the effect of depriving Plaintiffs of their federally-protected rights.  With respect to Coviello and Pierson, however, it remains the case that no relevant allegations take them outside the scope of their "legitimate legislative activity," and thus they remain immune under federal common law.  See Baraka, 481 F.3d at 195–96; see also Bogan, 523 U.S. at 54–55.

With respect to the conspiracy claims under Sections 1985(2) and 1986, however, the Court finds that those claims are without merit and must be dismissed.  Plaintiffs' claims under Section 1985(2) are dismissed because Plaintiffs fail to allege "that racial, or otherwise class-based, invidiously discriminatory animus lay behind the defendants' actions."  See Parrott v.

---

[3]Plaintiffs also attempt to ground their claim in Defendants' alleged conspiracy to cover up the illegal acts that formed the basis of Plaintiffs' whistle-blowing activities.  Again, however, the Court finds that these actions are not relevant to Plaintiffs' claims under Section 1983 because, while improper, they do not impact Plaintiffs' protected rights.

Abramsen, 200 Fed. App'x 163, 165 (3d Cir. 2006); Magnum v. Archdiocese of Philadelphia,

253 Fed. App'x 224, 230 (3d Cir. 2007).  Plaintiffs' Amended Complaint provides absolutely no

basis for finding that Defendants acted with a "racial" or "class-based" discriminatory animus.

Furthermore, in the absence of a valid Section 1985 claim, Plaintiffs cannot state a claim

pursuant to Section 1986.  See Finch v. Buechel, 188 Fed. App'x 139, 141 (3d Cir. 2006).

Accordingly, because Plaintiffs fail to establish that Defendants acted with a racial or class-

based discriminatory intent, and because a Section 1986 claim cannot be maintained in the

absence of a proper Section 1985 claim, Plaintiffs' claims thereunder are dismissed.

   iii.  *Fourteenth Amendment Claims under Section 1983, 1985 and 1986*

  Plaintiffs also assert Fourteenth Amendment claims under Sections 1983, 1985 and 1986,

presumably based upon a deprivation of their property interest in continued employment.   To

succeed on a claim for deprivation of due process rights under the Fourteenth Amendment based

on termination of a specific employment position, a plaintiff must establish a property interest in

the employment.  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972); Latessa v.

New Jersey Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997).  To have a property interest in

a job or job benefit, an employee must have a legitimate claim of entitlement to his position.

Latessa, 113 F.3d at 1318.  Property interests in employment may also arise from "mutually

explicit understandings between a government employer and employee."  Id.  In this case,

Plaintiffs have failed to allege in any manner that they had a property interest in their continued

employment at the BPA, nor is the Court otherwise able to identify such an interest.

Accordingly, because the Court finds that Plaintiffs were not deprived of any protected right under the Fourteenth Amendment, Plaintiff's claims thereunder are dismissed as to all filing Defendants.

    B.     <u>State Claims</u>

Plaintiffs assert state claims against all Defendants for, *inter alia*, intentional and/or negligent infliction of emotional distress (count three); negligent hiring / retention (count 4); *respondeat superior* (count 5); violation of the Conscientious Employee Protection Act ("CEPA") (count 6); interference with prospective economic advantage (count 7); violation of the New Jersey Civil Rights Statute (count 8); and wrongful termination (count 9). Because Plaintiffs have alleged a proper claim under CEPA, those claims may proceed. All of the remaining state claims, however, are dismissed.

    i.     *CEPA Claims (Count 6)*

Plaintiffs allege that they were retaliated against for engaging in protected expression in violation of CEPA. CEPA expressly forbids an employer from taking retaliatory action against an employee who discloses information to a supervisor or public body related to an activity, policy or practice of the employer that the employee reasonably believes is in violation of the law or that is fraudulent or criminal. <u>See</u> N.J.S.A. § 34:19-3. Liability is not limited to employers, however, as CEPA also creates individual liability for employees or supervisors acting with employer authorization. <u>See</u> <u>Fasano v. Fed. Reserve Bank of New York</u>, 457 F.3d 274, 289 (3d Cir. 2006); <u>Palladino ex rel United States v. VNA of S. N.J., Inc.</u>, 68 F. Supp. 2d 455, 474 (D.N.J. 1999). Plaintiffs bringing suit under CEPA must establish that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Maimone v. Atl. City, 188 N.J. 221, 230 (2006) (citing Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).  In other words, Plaintiffs must identify "the asserted violation with adequate particularity."  Klein v. Univ. of Med. and Dentistry of N.J., 377 N.J. Super. 28, 40 (App. Div. 2005) (citing McLelland v. Moore, 343 N.J. Super. 589, 601 (App. Div. 2001)).

As alleged, little doubt exists that Plaintiffs were performing a "whistle-blowing" activity under N.J.S.A. § 34:19-3 by reporting conduct that they "reasonably believed" to be illegal. Furthermore, considering the temporal proximity between Defendants' alleged retaliatory conduct and Plaintiffs' whistle-blowing activities, it appears that, at least at this stage, Plaintiffs have properly established a causal connection between their whistle-blowing activities and eventual termination.  Thus, the only remaining question is whether each named Defendant can be held liable under the statute.

The BPA and City of Bayonne both argue that they are not subject to liability under the statute because they are not "employers" within the meaning of CEPA.  The BPA argues that it was not Plaintiffs' employer because it was "controlled" by the City of Bayonne, while the City argues that Plaintiffs were employees only of the BPA, a separate legal entity, and not the City. Because it appears that the BPA was in fact Plaintiffs' "employer," however, and because Plaintiffs have alleged that Mayor Doria and the City of Bayonne were effectively in control of the BPA's activities, the Court finds that, at least at this stage, Plaintiffs' CEPA claims against

the BPA and City of Bayonne may proceed.

Defendants Coviello, Pierson and Cresci argue that they are not liable under CEPA both because CEPA does not allow for individual liability and because they did not engage in an "adverse employment action" against Plaintiffs.   Contrary to Defendants' assertion, however, individual liability may exist under CEPA for employees or supervisors acting with employer authorization.  See Fasano, 457 F.3d at 289.  Additionally, Plaintiffs have adequately alleged that the individual Defendants engaged in an "adverse employment action," based both on their alleged participation in the BPA's terminating action as well as Cresci's threats that Plaintiffs would "lose their jobs" for engaging in whistle-blower activities.  Accordingly, because individuals may be held liable under CEPA, and because Plaintiffs have properly alleged that the individual Defendants engaged in an "adverse employment action" to prevent Plaintiffs from "blowing the whistle," the Court finds that Defendants' motions to dismiss the CEPA claims are denied.

ii.    *Claims Subsumed Under CEPA*

CEPA includes a waiver provision stating that the institution of a CEPA claim "shall be deemed a waiver of the rights and remedies available under any contract, collective bargaining agreement, State law, rule or regulation or under common law."  N.J.S.A. § 34:19-8.  This provision recognizes that CEPA "provides a bundle of rights protecting employees from retaliatory discharge," and ensures that any "[p]arallel claims based on those rights, privileges and remedies are waived because they represent multiple or duplicative claims based on retaliatory discharge."  See Young v. Schering Corp., 141 N.J. 16, 29 (1995); see also Palladino,

68 F. Supp. 2d at 470 ("The unambiguous language of the New Jersey provision indicates that by filing a claim under CEPA, a plaintiff waives his or her right to assert claims for the same conduct.").  The waiver provision thus precludes all claims "substantially related" and based on the same conduct as the CEPA claim, "includ[ing] all rights and remedies that are available when an employee is wrongfully discharged for disclosure, in an attempt to prevent multiple claims based upon the same issue."  See Espinosa v. County of Union, 2005 WL 2089916, *11 (D.N.J. Aug. 30, 2005), aff'd on other grounds, 212 Fed. App'x 146, 156 (3d Cir. 2007).

Importantly, however, the waiver provision does not apply "to those causes of action that are substantially independent of the CEPA claim."  Young, 141 N.J. at 29.  Claims that are unrelated to the retaliatory conduct and require a showing of different proofs are not waived by the institution of a CEPA claim.  Espinosa, 2005 WL 2089916, at *11.  Thus, Courts considering a CEPA claim are tasked with determining whether, based upon the circumstances, additional claims represent "multiple or duplicative claims based on retaliatory discharge," or whether instead they are "substantially unrelated to the retaliatory discharge claim" and "require different proofs than those needed to substantiate the CEPA claim."  Young, 141 N.J. at 29, 31.

Defendants in this case variously assert that all claims other than the CEPA claim should be dismissed as duplicative.  The Court is mindful, however, that CEPA only precludes claims based on "similar conduct," and that it must determine whether the related claims are "substantially related" to the retaliatory conduct or are "independent" and require "different proofs."  Because the Court finds that Plaintiffs' wrongful termination claim is entirely "duplicative" of the CEPA claim, and because many of the remaining state claims are based at least in part on the retaliatory conduct, the wrongful termination claim is dismissed in its entirety,

see <u>Calabria v. State Operated Sch. Dist. of Paterson</u>, 2008 WL 3925174, *7 (D.N.J. Aug. 26,

2008) (wrongful termination claim precluded by CEPA), and the remaining state claims are

dismissed to the extent that they are based on the alleged retaliatory conduct.  <u>See</u> <u>Boody v.</u>

<u>Township of Cherry Hill</u>, 997 F. Supp. 562, 568–69 (D.N.J. 1997) (dismissing state law claims

for infliction of emotional distress, conspiracy, harassment, and interference with contract of

employment because based on the same retaliatory conduct as that underlying CEPA claim).[4]

     Thus, for example, Plaintiffs' claims for emotional distress, negligent hiring, *respondeat*

*superior*, interference with economic advantage, and for violating the due process and free

speech principles of New Jersey's Civil Rights Statute are dismissed to the extent that they are

based on Defendants' alleged retaliatory conduct.  This includes any claims arising out of

Plaintiffs' termination, Defendant Cresci's alleged retaliatory threats that Plaintiffs were

"probably going to lose their jobs," and Mayor Doria's alleged retaliatory statement, as described

earlier in this Opinion.  <u>See, e.g.</u>, <u>Lynch v. New Deal Delivery Serv., Inc.</u>, 974 F. Supp. 441, 456

(D.N.J. 1997) (dismissing emotional distress claim based primarily upon "discharge itself and the

manner in which it was conducted" because the claim was linked to the termination and thus

waived by CEPA) (not followed on other grounds, see <u>Farrell v. Planters Lifesavers Co.</u>, 206

F.3d 271, 282 (3d Cir. 2000)); <u>Baldassare</u>, 250 F.3d at 201–02 (dismissing claims for violation of

state constitutional right to freedom of speech and tortious interference with economic advantage

because they were based on facts identical to the retaliation claim and thus were waived under

CEPA.  While the Court is mindful that such claims are not always precluded by a CEPA claim,

---

[4]CEPA does not preclude federal claims, and thus Plaintiffs' claims in Counts 1 and 2 for violation of federally-protected rights are unaffected by CEPA's waiver provision.

see Espinosa, 212 Fed. Appx. at 156, it nonetheless finds that, given the nature of the remaining

claims, any proofs based on the alleged retaliatory acts would be substantially similar to those

underlying the CEPA claim, leaving the claims as "essentially cumulative."  See Young, 141 N.J.

at 27.  To the extent that these claims are independent of Defendants' alleged retaliatory conduct,

however, the claims are not precluded by CEPA.

        iii.     *Intentional / Negligent Infliction of Emotional Distress (Count 3)*

Plaintiffs' raise claims for negligent and intentional infliction of emotional distress

("IIED") based upon Defendants' alleged conduct that was "outrageous and exceeded all bounds

usually tolerated by a decent society."  As a threshold matter, however, the Court notes that to the

extent these emotional distress claims are based upon Defendants' alleged retaliatory conduct,

these claims have already been dismissed under the exclusionary provision of CEPA.  See, e.g.,

Lynch, 974 F. Supp. at 456 (dismissing emotional distress claim under exclusionary provision of

CEPA because based primarily upon circumstances surrounding discharge); Boody, 997 F. Supp.

at 568–69.  Furthermore, to the extent that this or any other tort claim is based upon workplace

negligence, the Court agrees with Defendants that such claims are barred by the New Jersey

Workers' Compensation Act ("WCA").[5]  See, e.g., Smith v. Exxon Mobil Corp., 374 F. Supp. 2d

406, 424 (D.N.J. 2005) (dismissing claim for negligent infliction of emotional distress under the

WCA).

---

[5] Additionally, the Court declines to dismiss Plaintiffs' tort claims for failing to comply with the New
Jersey's Tort Claims Act's six-month waiting period.  See N.J.S.A. § 59:8-8.  While it is indeed true that Plaintiffs
failed to wait the requisite six months, the Court nonetheless notes that such a violation generally results only in
dismissal without prejudice.  See Guerrero v. City of Newark, 216 N.J. Super. 66, 74–75 (N.J. App. Div. 1987).
Because it appears that Defendants will not be prejudiced by allowing the claims to proceed, and in consideration of
the interests of judicial economy implicated by the fact that Plaintiffs' could simply re-file their claims upon
dismissal without prejudice, the Court will allow Plaintiffs' tort claims to remain despite the violation.  See, e.g., id.

Accordingly, Plaintiffs can only state a viable claim for IIED based upon actions other than the retaliatory conduct addressed by CEPA.  To prevail on an IIED claim, Plaintiffs must show that Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Marrero v. Camden County Bd. of Soc. Servs., 164 F. Supp. 2d 455, 479 (D.N.J. 2001).  "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability for IIED.  Barboza v. Greater Media Newspapers, 2008 WL 2875317, *5 (D.N.J. July 22, 2008).  Indeed, "[t]he limited scope of this tort tolerates many kinds of unjust, unfair and unkind conduct."  Id.  Furthermore, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery" for IIED.  Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (applying Pennsylvania law).

In this case, it appears, though Plaintiffs do not specify, that Defendants' IIED claims are based both on Defendants' alleged retaliatory conduct as well as an alleged series of criminal and corrupt practices engaged in by Defendants such as ticket fixing, conspiring to cover-up wrongdoing, misusing the office, and authorizing illegal payments.  As stated earlier, to the extent that these claims are based on retaliatory conduct, they are precluded by CEPA.  With respect to the other grounds, however, the Court finds that, even when construed most favorably to Plaintiffs, Defendants' alleged corrupt practices do not rise to the level necessary to maintain a claim for IIED.  See Marrero, 164 F. Supp. 2d at 479 ("mere fact that [d]efendants acted for an improper purpose does not give rise to an actionable claim").  Accordingly, Plaintiffs' claims for IIED against all Defendants are dismissed under Rule 12(b)(6) for failure to state a claim.

iv. *Negligent Hiring / Retention (Count 4)*

Plaintiffs next bring a claim for negligent hiring and retention based upon Defendants'

"appointing, hiring and retaining" various employees even after becoming aware of their alleged

criminal acts.  As stated above, however, an employee covered by the WCA cannot sue his

employer or a co-employee for negligence.  Wellenheider v. Rader, 49 N.J. 1, 9 (1967).  This is

true regardless of the kind of injury alleged, and has specifically been held to bar claims of

negligent hiring and retention.  See, e.g., Cremen v. Harrah's Marina Hotel Casino, 680 F. Supp.

150, 155–56 (D.N.J. 1988) (negligent hiring and retention claims barred by exclusive remedy

provision of the WCA); DeMaria v. The Home Depot, 1998 WL 1750127, *3 (D.N.J. Mar. 31,

1998) (negligent hiring and retention claims barred by WCA).  Accordingly, because this claim

sounds in negligence and is compensable under the WCA, it is hereby dismissed.

v. *Respondeat Superior (Count 5)*

Plaintiffs bring suit against all Defendants under a claim of *respondeat superior*, stating

that "Defendants are liable for the actions of the individual Defendants . . . to the extent

Defendants acted within the scope of their duties."  As an initial matter, the Court notes that

Plaintiffs appear to base this claim on Defendants' alleged campaign to "terminate, harass,

humiliate and threaten" the Plaintiffs.  Because the only allegations supporting such a claim are

those involving Defendants' alleged retaliatory actions, the Court finds that these claims are

barred by CEPA.

Alternatively, to the extent that Plaintiffs attempt to hold the BPA and City of Bayonne

vicariously liable due to "customs and policies of ongoing and criminal conduct as pleaded," the

22

Court notes that the only facts supporting a tortious "custom or policy" by the municipalities are those dealing with the alleged retaliatory acts against Plaintiffs for whistle-blowing activities. Because these allegations are based on the same set of facts and would require the same set of proofs as a claim for retaliation, however, the claim is again barred by the exclusionary provision of CEPA.  Furthermore, with respect to the individual Defendants, the Court notes that Plaintiffs' *respondeat superior* claim is specifically based on actions taken "within the scope of their duties."  The Court has already established, however, that public officials may not be held liable for the "exercise of discretion" or for "legislative or judicial action or inaction." See N.J.S.A. § 59:3-2.  Accordingly, because the claims for *respondeat superior* against the municipalities are barred by CEPA, and because the individual Defendants are immune from liability for actions taken within the scope of their employment, Plaintiffs' claims for *respondeat superior* are dismissed.

> vi.    *Interference with Prospective Economic Advantage (Count 7)*

Plaintiffs next raise a common law claim for interference with prospective economic advantage, alleging that Defendants "interfere[d] with the employment of Plaintiffs," resulting in "loss of that prospective advantage, and economic damage by means of their termination."  As an initial matter, the Court notes that, to the extent that this claim is based on Defendants' alleged retaliatory conduct, it has already been dismissed under the CEPA's waiver provision.  Because it appears from the allegations in the Amended Complaint that this claim is based entirely on Plaintiffs' termination, the Court finds that this claim is precluded by CEPA and dismissed for failure to state a claim.

Alternatively, however, the Court notes that this claim is also subject to dismissal as against the BPA, City of Bayonne, Coviello and Pierson because Plaintiffs have utterly failed to allege a proper cause of action against these Defendants.  Claims for tortious interference require, *inter alia*, that the claim be directed at a non-contracting third party.  See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 752–53 (1989).  Accordingly, because the BPA and City of Bayonne, as employers, are alleged to be parties to the employment contract between themselves and Plaintiffs, the claim against them must fail.  See Fioriglio v. Atl. City, 996 F. Supp. 379, 392 (D.N.J. 1998).  Similarly, as employees of the BPA and City of Bayonne, the individual Defendants cannot be held liable for interfering with another's contract with their common employer while acting in the course of their employment.  See id. (noting that corporations can only act through their agents and employees and that employees are generally immune from tort liability where they exercise a privilege held by the employer).  Although Plaintiffs attempt to circumvent this rule by arguing that the individual Defendants acted outside the scope of their employment, the Court has already noted its finding that Coviello and Pierson acted within the scope of their employment and legislative duties with respect to Plaintiffs' termination.[6]  Accordingly, even in the absence of CEPA preclusion, this claim is still subject to dismissal as against the BPA, City of Bayonne, Coviello and Pierson.

vii.    *New Jersey Civil Rights statute (Count 8)*

Plaintiffs also raise claims under the New Jersey Civil Rights Statute for violation of their due process and free speech rights, as protected under the New Jersey State Constitution.

---

[6]Based upon Plaintiffs' allegations, only Cresci can be viewed as having potentially acted outside the scope of his employment with respect to Plaintiffs' termination due to his alleged threat that Plaintiffs' "were probably going to lose their jobs."

Though not specified, it appears that the only valid basis for Plaintiffs to allege due process and free speech violations are the circumstances surrounding Defendants' alleged retaliatory conduct, including the threats allegedly made to silence Plaintiffs and Plaintiffs' eventual termination. Accordingly, because the Court finds that Plaintiffs' claims under the New Jersey Civil Rights Statute arise from the same set of facts as those surrounding their retaliation claim, these claims are dismissed under CEPA's waiver provision.  See, e.g., Baldassare, 250 F.3d at 202 (dismissing claim under New Jersey Civil Rights Statute because it "ar[o]se from the same set of facts surrounding [the] retaliation claim").

viii.    <em>Wrongful Termination (Count 9)</em>

Plaintiffs' claims for wrongful termination are based squarely on the allegation that Defendants terminated Plaintiffs in retaliation for "exercising their rights under the State and Federal Constitution" and "reporting and complaining [about] the illegal and criminal acts."  As previously held, Plaintiffs' wrongful termination claims are precluded by CEPA's waiver provision because they are based on Defendants' alleged retaliatory conduct.  See N.J.S.A. § 34:19-8.  Accordingly, these claims are dismissed.

ix.    <em>Punitive Damages</em>

Both the City of Bayonne and the BPA argue that they may not be held liable for punitive damages.  Because the only claims remaining against the municipalities are those under 42 U.S.C. § 1983 and CEPA, the Court will consider this issue only with respect to those two claims.  It is well established that municipal corporations may not be held liable for punitive damages under Section 1983.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259–60

25

(1981); Doe v. County of Centre, PA, 242 F.3d 437, 455–56 (3d Cir. 2001).   Under CEPA,

however, a public employer may be held accountable for punitive damages.  See Abbamont v.

Piscataway Twp. Bd. of Ed., 138 N.J. 405, 425–26 (1994); Gares v. Willingboro Twp., 90 F.3d

720, 729–30 (3d Cir. 1996).  Accordingly, the Court finds that the City of Bayonne and the BPA

may not be held liable for punitive damages under Section 1983, but that punitive liability may

exist under CEPA.

>          x.     *Defendant Cresci's Motion for Sanctions*

Defendant Cresci's motion for Rule 11 sanctions and request for payment of all

reasonable attorney fees and expenses is denied.  Cresci files this request on the basis that

Plaintiffs' lawsuit is frivolous.  Sanctions under Rule 11 are appropriate "only in the exceptional

circumstance . . . where a claim or motion is patently unmeritorious or frivolous."  See Doering

v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988).  In this case, the

Court finds that each of Plaintiffs' motions are sufficiently grounded in law and fact to be

"reasonable[] under the circumstances" and thus not without merit.  See Ford Motor Co. v.

Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991) (establishing "reasonableness under

the circumstances" as the standard for sanctions under Rule 11).  Accordingly, because the Court

finds that Plaintiffs' motions are reasonable and not frivolous, Cresci's motion for sanctions and

payment of reasonable fees and expenses is denied.

>          xi.    *Defendant Pierson's Motion to Strike*

Defendant Pierson's motion to strike the allegations in paragraphs 38 and 54 relating to a

"thank you" note written by Pierson is also denied.  Pierson argues that the "thank you" note

allegations should be stricken under Fed. R. Civ. P. 12(f) because they are "impertinent and immaterial."  Rule 12(f) permits a party to have "stricken from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter."  In this case, the Court finds that the "thank you" note allegations are relevant to this action because they form part of the basis for Plaintiffs' whistle-blowing activities, which in turn support Plaintiffs' claims for retaliatory conduct against Defendants.  Because the Court finds that the allegations regarding the "thank you" note are relevant, and because insufficient evidence exists at this stage for the Court to determine that Plaintiffs have altered the evidence, Pierson's motion to strike is denied.

## IV.   CONCLUSION

For the reasons stated, Defendant Pierson's motion to dismiss under Rule 12(b)(6) is **granted** as to Counts 1–5 and 7–9 and **denied** as to Count 6; Defendant Coviello's motion to dismiss under Rule 12(c) is **granted** as to Counts 1–5 and 7–9 and **denied** as to Count 6; Defendant Cresci's motion to dismiss under Rule 12(b)(6) is **granted** as to Counts 3–5 and 7–9, **granted in part and denied in part** as to Counts 1–2, and **denied** as to Count 6; Defendant BPA's motion to dismiss under Rule 12(b)(6) is **granted** as to Counts 3–5 and 7–9, **granted in part and denied in part** as to Counts 1–2, and **denied** as to Count 6; Defendant City of Bayonne's motion to dismiss under Rule 12(b)(6) is **granted** as to Counts 3–5 and 7–9, **granted in part and denied in part** as to Counts 1–2, and **denied** as to Count 6; Defendant Pierson's motion to strike under Rule 12(f) is **denied**; and Defendant Cresci's motion for sanctions under Rule 11 is **denied**.   An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          January  29 , 2009
Orig.:         Clerk
cc:            All Counsel of Record
               The Honorable Mark Falk, U.S.M.J.

28