NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PETER HILBURN and FELICIA RYAN, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> BAYONNE PARKING AUTHORITY; : <br> JOSEPH DORIA, individually and in his : <br> official capacities; THE CITY OF : <br> BAYONNE, a Municipal Corporation; : <br> PETER CRESCI, individually and in his : <br> official capacities as Chairman of the : <br> Bayonne Parking Authority; MICHAEL : <br> PIERSON; KATHY LORE; and : <br> BAYONNE PARKING AUTHORITY : <br> (BPA) Commissioners 1-10, individually : <br> and in their official capacities, : <br> : <br> Defendants. : <br> : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 07-CV-5211 |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before this Court upon motion by Defendant Kathy Lo Re ("Defendant") to dismiss the First and Sixth Counts of the Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1] Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant Lo Re's motion to dismiss under Rule 12(b)(6) is **granted in part** and **denied in part**.

---

[1] In a footnote, Defendant contends that if this Court concludes that Count One should be dismissed with respect to Defendant, then this Court should dismiss Count Two as well.

I.     **BACKGROUND**[2]

    A.     Factual History

Plaintiff Felicia Ryan ("Ryan") was hired by the BPA as Executive Secretary in January 2001. Plaintiff Peter Hilburn ("Hilburn," and collectively with Ryan, "Plaintiffs") was hired by the BPA as Executive Director in September 2006. Collectively, Plaintiffs and Defendant Kathy Lo Re ("Lo Re") comprised the BPA Executive Department, each of whom were at-will employees with no contractual right to employment.

Plaintiffs allege that between September 2006 and March 2007, members of the BPA and City of Bayonne were engaging in criminal and suspicious activities. Hilburn first became suspicious when someone asked him to sign a check for a Christmas party without any explanatory documentation. Hilburn was also displeased because the BPA Commissioners took trips and billed them to the BPA. Hilburn thereafter instituted a policy forbidding such practices. When Hilburn voiced his concerns to Mayor Joseph Doria ("Mayor Doria"), he claims Mayor Doria told him to "let it be."

Ryan became concerned when she found an envelope with three parking tickets and a "thank you" note from Pierson while retrieving payroll records from Lo Re's filing cabinet, leading her to believe that Lo Re was illegally fixing tickets. Ryan's concern grew upon finding un-deposited cash in Lo Re's filing cabinet. Hilburn allegedly witnessed Lo Re failing to report, record or deposit cash from meter bags. Hilburn also suspected that his signature was being forged by someone at the BPA, allegedly Lo Re.

---

[2] The facts in this Opinion incorporate and supplement the facts of this Court's January 29, 2009 Opinion concerning a similar motion to dismiss with respect to other named Defendants in this matter.

Between March and May 2007, Hilburn voiced his concerns to several individuals, including Mayor Doria, Cresci, Coviello, Bayonne Corporation Counsel and the Bayonne Court Administrator. Finding their response inadequate, Hilburn contacted the New Jersey Attorney General ("Attorney General") and became an informant for the Attorney General's office.

In May 2007, the Attorney General served the BPA with the first of two subpoenas. Plaintiffs allege that Coviello shredded the subpoenas due to concerns that news of the subpoenas would be leaked. Mayor Doria allegedly then told Hilburn that, "if you had anything to do with this, you f***ed me and you f***ed yourself."

On July 16, 2007, the BPA terminated Plaintiffs and Lo Re. Ryan was told that the BPA was eliminating both her position and the BPA's executive branch and that she would not be transferred to another department. Hilburn was told that his position was being eliminated and that the BPA would no longer exist as an autonomous agency, but instead would be placed under the City. Cresci informed the media that the terminations were part of a departmental reorganization to stimulate strategic improvements. Plaintiffs dispute this reasoning, however, and instead assert that their terminations were in retaliation for their whistle-blowing activities.

      B.    Procedural History

Plaintiffs filed a notice of tort claim pursuant to N.J.S.A. § 59.1-1 on August 2, 2007. The initial Complaint was filed on October 29, 2007. An Amended Complaint was filed on July 17, 2008, alleging nine separate causes of action, including: a civil action for deprivation of rights under 42 U.S.C. § 1983 (Count One); conspiracy to violate federal civil rights under 42 U.S.C. §§ 1983, 1985 and 1986 (Count Two); intentional and/or negligent infliction of emotional distress (Count Three); negligent hiring / retention (Count Four); *respondeat superior* (Count Five); violation of the

Conscientious Employee Protection Act ("CEPA") (Count Six); interference with prospective economic advantage (Count Seven); violation of the New Jersey Civil Rights Statute (Count Eight); and wrongful termination (Count Nine). For each count, Plaintiffs seek an award of compensatory damages, punitive damages, reinstatement of employment and attorneys' fees.

By Opinion of this Court, dated January 29, 2009, a partial dismissal of Plaintiffs' Amended Complaint was granted to moving Defendants, excluding Defendant Lo Re. On May 7, 2009, the Clerk of this Court entered default against Defendant Lo Re. On July 13, 2009, Defendant Lo Re's motion to set aside entry of default was granted by this Court. On August 21, 2009, Defendant Lo Re filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Rule 12(b)(6) standard. See 550 U.S. 544 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, 550

U.S. at 560 (citing Conley, 355 U.S. at 45–46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965.

**III.   DISCUSSION**

    A.   42 U.S.C. § 1983 Claims

        *I.   First Amendment Claim*

With respect to the Count One of Plaintiffs' Amended Complaint, Defendant Lo Re contends that Plaintiffs fail to allege that Defendant instituted retaliatory action against Plaintiffs or that Defendant had motive or opportunity to engage in such retaliatory action. Further, Defendant contends that the alleged misbehavior is protected under the doctrine of legislative immunity. Plaintiffs argue that they have adequately pled a Section 1983 claim against Defendant Lo Re because the alleged intentional, malicious and criminal conduct occurred outside the scope of Defendant's employment and as a result, the alleged misconduct is not subject to the protection of legislative immunity.

While not a source of substantive rights, Section 1983 provides a method for vindicating rights secured elsewhere in federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim pursuant to § 1983, Plaintiffs must demonstrate that the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). Plaintiffs allege that they were deprived of their First Amendment rights when Defendants retaliated against them for "blowing the whistle" on the corrupt activities allegedly taking place at the BPA. To prevail on a First Amendment retaliation claim,

Plaintiffs must show that: (1) the conduct at issue was constitutionally protected; (2) the retaliatory action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Federal common law provides public officials with immunity "for all actions taken in the sphere of legitimate legislative activity." Baraka v. McGreevey, 481 F.3d 187, 195–96 (3d Cir. 2007). '[W]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Fowler-Nash v. Democratic Caucus of Pa., 469 F.3d 328, 333 (3d Cir. 2006) (citing Bogan v. Scott-Harris, 532 U.S. 44, 52 (1998)). The doctrine of qualified immunity shields government officials "from suits seeking damages under 42 U.S.C. § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Donahue v. Gavin, 280 F.3d 371, 377 (3d Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

This Court previously concluded that Plaintiffs' adequately pled a First Amendment retaliation claim, however, this Court must now examine whether Defendant deprived Plaintiffs of such rights "under the color of state law."[3] As previously stated by this Court, Defendants' alleged corrupt practices of ticket fixing, misusing funds and engaging in illegal contracts have little

---

[3] See Hilburn v. BPA, et al., (finding that voicing concerning over alleged criminal conduct is protected speech, alleged retaliatory campaign of harassment and intimidation, including threats that Plaintiffs would "lose their jobs," is "sufficient to deter a person of ordinary firmness" from exercising those rights and due to the temporal proximity that exists between Plaintiffs' whistle-blowing activities, Defendants' alleged threats, and Plaintiffs' actual termination, the Court finds that Plaintiffs have sufficiently established a causal link between their constitutionally protected activity and the retaliatory action) .

6

relevance to Plaintiffs' First Amendment claims under Section 1983 because, while improper, they do not impact Plaintiffs' protected rights, and would not "deter a person of ordinary firmness from exercising his constitutional rights." Hilburn v. Bayonne Parking Auth., 2009 U.S. Dist. LEXIS 6762, *13 (D.N.J. Jan. 29, 2009).  In that opinion, this Court determined that there are only two grounds upon which Plaintiffs may properly base their claims against Defendants, Coviello, Pierson and Cresci, including: (1) those actions taken by the individual Defendants in the course of their duties as BPA commissioners, including the decision to terminate Plaintiffs; and (2) Cresci's alleged threat that Plaintiffs were "probably going to lose their jobs." Id. at *14  "Rather, it appears that the only proper basis for Plaintiffs' Section 1983 claims are that Defendants engaged in a retaliatory campaign of threats and intimidation in an effort to prevent Plaintiffs from speaking about the alleged corruption." Id. at *18.

     In her capacity as Assistant Director of the BPA and a former BPA Commissioner, Lo Re is similarly situated with Coviello and Pierson.   Therefore, as previously stated, "to the extent that Plaintiffs' claims are based upon actions taken within the "legislative" process, including the decision to terminate Plaintiffs, the individual Defendants are immune from suit."  Id.  Further, "to the extent that Plaintiffs' claims are based on non-legislative activities, however, including retaliatory threats and intimidation, their claims may proceed." Id.  Notably, Defendant contends that Defendant did not possess the requisite voting power necessary to affect a termination of the Plaintiffs' positions. Further, Defendant's alleged misconduct including forgery, policy violation on failure to deposit cash, unaccountable trip expenditures and incorrectly depositing although unsavory does not amount to retaliatory action.  Indeed, the alleged misconduct by Lo Re is the impetus for the whistle blowing, rather than the consequence of the whistle blowing.  Therefore, on

7

this ground, Defendant Lo Re's motion to dismiss is **granted.**

      *ii.*  *First Amendment Conspiracy Claim*

In Count Two of the First Amended Complaint, Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that Defendants conspired to retaliate against them for exercising their First Amendment rights and to prevent Plaintiffs from speaking out about the alleged corruption.[4]  Plaintiffs asserting conspiracy claims under Section 1983 "must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." See Royster v. Beard, 2009 U.S. App. LEXIS 1364, *3 (3d Cir. Jan. 22, 2009). In the absence of direct allegations concerning Lo Re and/or any agreement with Lo Re and another individual to deprive Plaintiffs of a constitutional right under color of law, Count Two with respect to Defendant Lo Re is hollow. Given this Court's finding that Defendant Lo Re's alleged misconduct neither constitutes retaliatory action nor a deprivation of First Amendment rights, the conspiracy claim of the complaint is not permitted to proceed against Defendant Lo Re.   Therefore, on this ground, Defendant Lo Re's motion to dismiss is **granted**.

  B.  State Law CEPA Claim

With respect to Count Six of the Amended Complaint, this Court previously determined that Plaintiffs adequately alleged a violation of CEPA. Hilburn, 2009 U.S. Dist. LEXIS at *24.  CEPA expressly forbids an employer from taking retaliatory action against an employee who discloses information to a supervisor or public body related to an activity, policy or practice of the employer

---

[4]Plaintiffs also attempt to ground their claim in Defendants' alleged conspiracy to cover up the illegal acts that formed the basis of Plaintiffs' whistle-blowing activities.  Again, however, the Court finds that these actions are not relevant to Plaintiffs' claims under Section 1983 because, while improper, they do not impact Plaintiffs' protected rights.

8

that the employee reasonably believes is in violation of the law or that is fraudulent or criminal. See N.J.S.A. § 34:19-3. "'Retaliatory action' means the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. § 34:19-2. "An adverse employment action involves some harm to an employee's employment opportunities." Caver v. City of Trenton, 420 F.3d 243, 256 (3d Cir. 2005) (citing Nelson v. Upsala, 51 F.3d 383, 388 (3d Cir. 1995)).

Plaintiffs bringing suit under CEPA must establish that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Maimone v. Atl. City, 188 N.J. 221, 230 (2006) (citing Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)). In other words, Plaintiffs must identify "the asserted violation with adequate particularity." Klein v. Univ. of Med. and Dentistry of N.J., 377 N.J. Super. 28, 40 (App. Div. 2005) (citing McLelland v. Moore, 343 N.J. Super. 589, 601 (App. Div. 2001)).

Liability is not limited to employers, however, as CEPA also creates individual liability for employees or supervisors acting with employer authorization. See Fasano v. Fed. Reserve Bank of New York, 457 F.3d 274, 289 (3d Cir. 2006); Palladino ex rel United States v. VNA of S. N.J., Inc., 68 F. Supp. 2d 455, 474 (D.N.J. 1999).

> [B]ecause the implications of various New Jersey Supreme Court and District of New Jersey cases require a liberal reading of CEPA, this Court finds that CEPA creates individual liability for agents of the employer, including supervisory employees who act with the authorization of the employer.

Palladino ex rel, 68 F. Supp. 2d 455, 474 (D.N.J. 1999).

This Court has already held that the Plaintiffs' allegations as pertaining to the CEPA claim are adequate to proceed.  Despite Defendant's contention that she did not engage in direct retaliation against Plaintiffs, the statute merely requires an adverse employment action against Plaintiffs with a causal connection to the whistle blowing activity.  In light of Plaintiffs' employment termination and the statute's recognition of individual liability, this Court permits Plaintiffs' CEPA claim against Defendant Lo Re to proceed at this time.  Therefore, on this ground, Defendant Lo Re's motion to dismiss is **denied**.

### IV.   CONCLUSION

For the foregoing reasons, Defendant Lo Re's motion to dismiss is **granted in part** and **denied in part**.  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated:   December 30, 2009
cc:   All Counsel of Record
   Hon. Mark Falk, U.S.M.J.
   File