NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PETER HILLBURN and FELICIA RYAN, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 07-05211 (DMC)(JAD) |
| BAYONNE PARKING AUTHORITY; JOSEPH DORIA, et al., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motions for Summary Judgment and Sanctions filed by Defendants City of Bayonne and Joseph Doria. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's Motion for Summary Judgment and Defendant's Motion for Sanctions are **granted**.

## I.   BACKGROUND[1]

On October 29, 2007, Peter Hillburn and Felicia Ryan ("Plaintiffs") former employees of the Bayonne Parking Authority ("BPA"), filed a Complaint against the Defendants, City of Bayonne ("Defendant City of Bayonne"), Joseph Doria ("Defendant Doria"), Peter Cresci and

---

[1]Other relevant facts can be found in this Court's December 30, 2009 Opinion.(ECF No. 116).

others, alleging violations of 42 U.S.C § 1983 under the New Jersey Conscientious Employee

Protection Act (CEPA). (See Pl.'s Compl., Oct. 29, 2007, ECF No. 1). On January 18, 2011,

Defendants, City of Bayonne and Doria filed a Motion for Summary Judgment (ECF No. 203).

Plaintiffs requested additional time to oppose said Motion so as to have an opportunity to depose

Defendant Doria. On July 15, 2011, after deposing Defendant Doria, Plaintiffs filed an

Opposition to Defendants Motion for Summary Judgment. (ECF No. 222). In support of their

Opposition, Plaintiffs relied upon an eight page Declaration provided by Defendant Peter Cresci

(who had been dismissed with prejudice on January 5, 2011) in which Mr. Cresci revealed

information and communications that he had apparently learned and observed only while serving

as Assistant Counsel for the City and or General Counsel for the BPA. While attempting to rely

upon Mr. Cresci's Declaration, Plaintiff's counsel, Ms. De Soto, refused to produce Mr. Cresci

for a deposition, and Mr. Cresci refused to appear for one. Defendants requested the Court's

directive to depose Cresci, and Plaintiff objected to the request. Following a status conference in

September 2011, the Honorable Joseph A. Dickson, U.S.M.J., granted Defendant's request to

subpoena Mr. Cresci for a deposition to be taken within 30 days. (ECF No. 230). Mr. Cresci

moved to quash the subpoena; the Court denied this motion and ordered Mr. Cresci to be

deposed on January 12, 2012. (ECF No. 232; ECF No. 236; ECF No. 239). On January 11, 2012,

the Plaintiffs filed a Second Brief in Opposition to Summary Judgment, omitting any reliance

upon Cresci's Declaration in support of that opposition. (See Opp. Brief to Def.'s Summ. J. Mot.,

Jan.11, 2011, ECF No. 240). Ms. De Soto also submitted a letter to Judge Dickson, wherein she

notified the court she was withdrawing Cresci's Declaration and re-filing her opposition brief.

(ECF No. 241). Ms. De Soto wrote: "the information contained in [Cresci's] Certification can be

2

independently verified and corroborated through the evidence already on record." (ECF No. 241).

Defendants allege that they attempted to depose Mr. Cresci "to explore the manner in which he had obtained the information contained in his declaration", but Ms. De Soto "resisted, forcing a number of status conferences and motion practice before the Court." (Memo of Law in Support of Def. Mot. for Sanctions, February 3, 2012, ECF No. 249-2).

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  ""In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**B.    DISCUSSION**

1. § 1983 Claims

Plaintiffs state claims under § 1983 alleging direct liability and liability based on conspiracy claims alleging that Defendants violated their First Amendment rights when Defendant Doria and the City of Bayonne allegedly conspired to retaliate against them for speaking out about alleged corruption or suspicious activities at the BPA.

Count I generally states that Defendants Doria and the City of Bayonne violated the Plaintiffs' First Amendment rights  pursuant to § 1983 . It is firmly established that "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996) (citing Monell v. Dep't of Social Servs. New York City, 436 U.S. 658 (1978)).

 In this Court's January 30, 2009 Opinion dealing with Defendants Motion to Dismiss, the Court stated that "Plaintiffs [made] a series of allegations, that if true, may lead to a finding that Defendants deprived Plaintiffs of their First Amendment rights under the color of law." Hillburn v. Bayonne Parking Authority, No. 07-CV-5211, 2009 WL 235629 at *5 (D.N.J. Jan. 30, 2009). While this was enough to survive a Motion to Dismiss, Plaintiffs have not proffered facts sufficient to survive a Motion for Summary Judgement.  Plaintiffs only allege that the act of being fired was enough to create a custom or policy of discrimination. Plaintiffs offer no specific evidence that the City of Bayonne has any policy or custom of retaliation against employees speaking out against their employer, nor that Doria directed the BPA to retaliate against Plaintiffs

4

or knew of any violations of subordinates. In stating that Doria was "in de facto control of the

day to day operations of the BPA," Plaintiffs rely on their own complaint, and cite to a page of

Doria's deposition that doesn't exist.[2] (Pl.'s Opp. to Def.'s Summ. J. Mot. at 9). Plaintiffs

continue to rely on their own brief in support of the factual assertion that Doria was in control of

the BPA. See id. "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to

repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir.

1990). Plaintiff Ryan admits she has no knowledge of whether Defendant Doria had anything to

do with her termination, and Plaintiff Hillburn relies heavily on the alleged statements of Doria

("If you had anything to do with this, you f***d me and you f***d yourself") that are

unsupported by corroborating evidence, nor do they create a material issue of fact taken on their

own. (See Pl.'s Compl.) As Plaintiffs have been unable to prove a genuine issue of material fact

in regards to the Defendants' direct liability under § 1983, summary judgment is proper in

regards to Count One.

Count Two states a conspiracy claim under § 1983. To bring a successful conspiracy

claim, Plaintiffs are required to "...show that two or more conspirators reached an agreement to

deprive him or her of a constitutional right under color of law." Parkway Garage, Inc. v. City of

Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993)(citing Adickes v. S.H. Kress & Co., 398 U.S. 144,

150 (1970). Plaintiff must prove a "meeting of the minds," whereby the defendants "reached an

understanding" to achieve the conspiracy's objective of retaliating against them for their speech.

Adickes, 398 U.S. at 158-9.

_____

[2]As noted by Defendants, Plaintiffs cite to Doria's Deposition at pages 218-219, while the
Deposition transcript provided to the Court in the pleadings only goes to page 142.

Defendants argue that there is insufficient evidence to support a jury finding that the City of Bayonne and Doria participated in a retaliatory campaign or otherwise conspired with the BPA Commissioners, against either Plaintiff with the effect of depriving either Plaintiff of their federally protected rights. Specifically, Defendants argue that "Plaintiff Ryan candidly admitted during the course of her deposition that she had no idea whether Mayor Doria had any involvement in the BPA's decision to terminate her." (Def.'s Mot. for Summary Judgment at 11).Additionally, Defendants argue that there is no specific evidence that establishes that Defendant Doria had any knowledge that Hillburn had communicated with the Attorney General's office. They state, "when specifically asked why he believed Doria had something to do with his firing, he cited to one statement which was allegedly made by Mayor Doria after the Attorney General' office served subpoena's upon the BPA, and the mood or 'intangibles' regarding his relationship with Mayor Doria after the incident." (Id. at 13).  Plaintiff's evidence, of unsupported assertions in briefs and the complaint, does not establish that Doria and any of the BPA commissioners reached an agreement to deprive either Hillburn or Ryan of their constitutional rights.  The facts proffered establish that Plaintiffs met with Doria regularly and the City of Bayonne and the BPA routinely discussed issues and occasionally shared employees. The Court agrees with Defendants' characterization of this evidence, that it "merely establishes that Mayor Doria was cooperative and on a friendly basis with the BPA, its Commissioners and other independent bodies within the City of Bayonne." (Def.'s Reply to Pl.'s Opp. to Def.'s Summ. J. Mot. 3, Feb. 9, 2012, ECF No. 250.) The fact that Mayor Doria met with BPA officials or that the government departments shared employees is not sufficient to create an issue of material fact as to the specific requirements of a conspiracy claim. Without further corroborating

6

evidence, this is just evidence of effective communications and proper procedure between local

governmental bodies. See Broadway Nat'l Bank v. Parking Authority of Bayonne, 191 A.2d 169,

174 (N.J. 1963)(The Supreme Court recognized that the New Jersey Parking Law envisioned

parking commissioners and municipal officials to be cooperative and friendly while performing

their services). Plaintiff was unable to prove any genuine issue of material fact as to whether

Defendant Doria was aware that Plaintiff Hillburn had reported his suspicions to the Attorney

General's office, and there are insufficient facts to create a genuine issue of fact as to whether

Doria conspired with BPA commissioners to deprive Hillburn and Ryan of their constitutional

rights by retaliating against them, thus summary judgment is also appropriate in regards to the

conspiracy claim.

### 2. CEPA Claims

In Count Six, Plaintiffs allege that they were retaliated against for engaging in protected

expression in violation of CEPA. CEPA expressly forbids an employer from taking retaliatory

action against an employee who discloses information to a supervisor or public body related to an

activity, policy or practice of the employer that the employee reasonably believes is in violation

of the law or that is fraudulent or criminal. See N.J.S.A. § 34:19-3. Liability is not limited to

employers, however, as CEPA also creates individual liability for employees or supervisors

acting within employer authorization. See Fasano v. Fed. Reserve Bank of New York, 457 F. 3d

274, 289 (3d Cir. 2006); Palladino ex rel United States v. VNA of S. N.J. Inc., 68 F. Supp. 2d

455, 474 (D.N.J. 1999).  Plaintiffs bringing suit under CEPA must establish that:

> (1) he or she reasonably believed that his or her employer's conduct was violating
> either a law, rule or regulation promulgated pursuant to law, or a clear mandate of
> public policy; (2) he or she performed a "whistle blowing activity" described in
> N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or

7

her; and (4) a causal connection exists between the whistle blowing activity and
the adverse employment actions.

Maimone v. Alt. City, 188 N.J. 221, 230 (2006)(citing Dzwonar v. McDevitt, 177 N.J. 451, 462

(2003)). In other words, Plaintiffs must identify "the asserted violation with adequate

particularity." Klein v. Univ. of Med. and Dentistry of N.J., 377 N.J. Super. 28, 40 (App. Div.

2005) (citing McLelland v. Moore, 343 N.J. Super. 589, 601 (App. Div. 2001)).

 As a threshold matter, it must be determined whether Defendants are liable under the

statute. Defendants argue that they are not subject to liability under the statute because they are

not "employers" under within the meaning of CEPA. Plaintiff argues that Defendants are liable

because Doria and Bayonne were effectively in control of the BPA's activities. In denying the

Defendants earlier 12(b)(6) motion, this Court concluded that, while the BPA was the Plaintiff's

employer, not the city, the mere allegation that Mayor Doria and the City of Bayonne were in

effective control of the BPA was, at least at that stage of the proceedings, sufficient to deny

Defendants Motion to Dismiss Plaintiff's CEPA claims against Bayonne and Doria. See Hilbur.,

2009 WL 235629 at *8-9. At this stage of the proceedings, as discussed above, Plaintiffs have

failed to proffer evidence to create a genuine issue of material fact in regards to element (4), that

a causal connection exists between the whistle blowing activity and the adverse employment

action or that the City of Bayonne and Doria were in control of the BPA so as to render them

employees for purposes of CEPA. For these reasons, and those discussed above, summary

judgment in regards to the CEPA claims is granted.

## II.   MOTION FOR SANCTIONS

### A.   STANDARD OF REVIEW

Sanctions are governed by Federal Rule of Civil Procedure Rule 11. Rule 11 provides, in

relevant part:

> (b) Representations to the Court. By presenting to the Court (whether by signing, filing, submitting or later advocating ) a pleading, written motion or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:
>> (3) The factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Rule 11 is intended to "deter baseless filings in the District Court" and "thus. . . streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 393 (1990). In this Circuit, "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir.1991).  "Reasonableness" in the context of Rule 11 has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." Id. Significantly, the moving party is not required to make a showing of bad faith. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir.1995). An "empty head, pure heart" excuse cannot be used by the accused party as justification for filing a frivolous motion. Acevedo v. Monsignor Donovan High School, No. 05-5169, 2006 WL 2594877 at *2 (D.N.J. Sept. 11, 2006); see also Langer v. Monarch Life Ins. Co., 966 F.2d 786, 810 (3d Cir.1992). To comply with the mandates of Rule 11, counsel is required to conduct a "reasonable inquiry into both the facts and law supporting a particular pleading." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 187 n. 7 (3d Cir.2002).

## B.     **DISCUSSION**

Defendants assert that Ms. DeSoto, Plaintiff's counsel, violated Rule 11 and is therefore subject to sanctions for "filing the Declaration of Peter Cresci; not affording Defendants the

9

opportunity to depose Mr. Cresci (even with a Court Order in place compelling his deposition) and then withdrawing Mr. Cresci's declaration after forcing Defendant's to engage in unnecessary motion practice in an effort to depose Cresci." (Memo of Law in Support of Def Mot. For Sanctions at 4, ECF No 249, Feb. 3, 2012). Defendants also allege that "Plaintiff's counsel represented on a number of occasions that Plaintiffs would withdraw Mr. Cresci's Declaration, yet wanted to retain the right to call Mr. Cresci at the time of trial. (Cert. of Anthony D'Elia, February 3, 2012, ECF No.249-1). Finally, on the eve of the deposition, one ordered by Judge Dickson and subsequently rescheduled multiple times, Ms. De Soto re-filed her Opposition Brief, removing any mention of Mr. Cresci's declaration, essentially rendering all of Defendant's legal work regarding this deposition for naught. (ECF No. 240, Jan. 1, 2012).

In ordering Mr. Cresci's deposition, Judge Dickson stated that "the sole purpose of Mr. Cresci's deposition is to ascertain how and when he learned of the specific communications and representations he made in the Cresci Declaration." (ECF No. 236 at 2). Judge Dickson concluded that it was "necessary to determine whether the Cresci Declaration contains privileged information, which is precisely why this Court ordered Defendants to depose Mr. Cresci." (Id. at 4).

Ms. DeSoto argues that "Rule 11 sanctions are not the legal remedy for Cresci not making himself available to the deposition requested by Defendants." (Opp. to Def.'s Mot. for Sanctions, Feb. 26, 2012, ECF No. 253). Additionally, Ms. De Soto asserts that "former Defendant Cresci was and is listed as witness pursuant to Rule 26." Id. Counsel's arguments miss the mark. Rule 11 provides that in filing a paper to the court, an attorney certifies to the best of their knowledge, and after a reasonable inquiry, that the motion is "not being presented for any improper purpose,

such as to harass, cause unnecessary delay or needlessly increase the cost of litigation." Fed. R.

Civ. P. 11(b)(3). If Ms. De Soto knew, as she admits in her letter to Judge Dickson, that "the

information contained in the Certification can be independently verified and corroborated

through the evidence already on the record," her continued protests to the deposition of Mr.

Cresci unnecessarily delayed the ligation of an already long, drawn out case. She did not make

"reasonable inquiry into both the facts and law" regarding her objections to Mr. Cresci's

deposition. In re Prudential Ins. Co., 278 F.3d at 187 n. 7.

Additionally Plaintiffs counsel also argues that Rule 11 sanctions are improper because

Defendants knew that Mr. Cresci was a party the case and never tried to depose him, therefore it

was improper to do so for purposes of summary judgement. Judge Dickson addressed this very

issue when Mr. Cresci attempted to quash the subpoena to depose him. Judge Dickson stated:

> The crux of Mr. Cresci's argument appears to be that Defendants never sought to depose
> him while he was a party to the case, or at any time during the discovery period, and that
> other witnesses can provide the information Defendants seek, which renders his
> deposition cumulative and duplicative. Mr. Cresci's argument is unpersuasive.
> Defendants are not trying to use Mr. Cresci as a "fact witness" or to gain evidence to use
> in the case; the sole purpose of Mr. Cresci's deposition is to ascertain how and when he
> learned of the specific communications and representation.

ECF No. 236 at 2. This Court finds Ms. De Soto's arguments equally unpersuasive.

Defendants seek reimbursement of the fees expended in connection with efforts to depose

Mr. Cresci and motion practice relating to the efforts to depose Mr. Cresci. We agree with

Defendants that sanctions are appropriate, but are not prepared to sanction Ms. De Soto for legal

work done in relation to Mr. Cresci's motion to quash his subpoena, as this does not relate to her

actions. Instead, reimbursement of fees relating only to the deposition of Mr. Cresci and motion

practice relating to these efforts are appropriate. The Court has reviewed the Defendants

submission and is awarding Defendants $4,851.00 in attorneys fees, based on 29.4 hours of work at the reasonable rate of $165 per hour.[3]

III.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment  is **denied.**

Defendant's Motion for Sanctions is **granted**. An appropriate order follows this Opinion.

_____
DENNIS M. CAVANAUGH, U.S.D.J.

Date:   September 24, 2012

cc:   Hon. Joseph A. Dickson, U.S.M.J.
      Counsel of Record
      File

---

[3]It should also be noted that this Court recognizes Defendant's statements in their Reply Brief to Plaintiff's Opposition to Summary Judgment regarding Ms. De Soto's "misstating or misciting deposition testimony" in order to bolster her arguments. Upon reviewing the deposition transcripts and the citations in Plaintiff's brief, the Court agrees with Defendants contentions. While Defendant did not move for sanctions regarding this pleading, the Court notes that Fed. R. Civ. P. 11(b)(3) requires that the factual contentions in any pleading have evidentiary support.

12